UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SCOTT FELTEN, et al., <br><br> Defendants. | No. 16 CV 11468 <br><br> Magistrate Judge Young B. Kim <br><br> March 9, 2018 |

## MEMORANDUM REPORT and RECOMMENDATION

Before this court upon referral is Plaintiff PrimeSource Buildings Products, Inc.'s ("PrimeSource") Motion for Issuance of Rule to Show Cause and a Finding of Contempt against Defendant Huttig Building Products, Inc. ("Huttig"). (R. 174; R. 176.) For the following reasons, this court recommends that PrimeSource's motion be denied:[1]

## Background

The facts and procedural history underlying this case are set forth in this court's December 9, 2017 opinion resolving PrimeSource's motion for preliminary injunction, and are incorporated by reference here. (R. 205.) As specifically relevant to this motion, in March 2017, about three months after PrimeSource filed

---

[1] Although Defendants filed a notice of appeal with respect to the preliminary injunction entered in this case, because the show cause motion is ancillary to the issues on appeal, the notice of appeal does not divest the district court of jurisdiction to resolve the current motion. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Wisconsin Mut. Ins. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006).

this lawsuit, the court entered a Temporary Restraining Order ("TRO") that was twice amended. (R. 41; R. 52; R. 78.) The final version was entered on April 19, 2017, and as relevant here, orders Huttig as follows:

> Defendant Huttig is not prohibited from soliciting customers to whom Defendants [Scott] Felten, [Garrett] Kessler, [Daniel] Kottmeyer, or [Allan] Sagunsky [collectively, "the Felten Defendants"], individually as PrimeSource employees, sold products or services to during the past two calendar years, provided that Defendants Felten, Kessler, Kottmeyer, and/or Sagunsky have no role, either directly or indirectly, in such solicitations by Huttig. *Huttig shall not solicit such customers using information provided to Huttig by Defendants Felten, Kessler, Kottmeyer, or Sagunsky.*

(R. 78 (emphasis added).) PrimeSource argues that Huttig should be found in contempt of this provision of the TRO because, according to it, testimony elicited during the preliminary injunction hearing shows that since the entry of the TRO, "others within Huttig have in fact used the information included in the Customer [L]ists to call on customers for the sale of fasteners." (R. 174, Pl.'s Mot. ¶ 3.) Specifically, PrimeSource argues that "[t]he use by others within Huttig of information developed by Felten, Kottmeyer, Sagunsky and Kessler related to the customers those individuals serviced at PrimeSource—like the Customer Lists—constitutes a violation of the TRO."[2] (Id. ¶ 4.) Accordingly, PrimeSource seeks an order finding Huttig in contempt of the TRO and awarding Plaintiff "such relief as may be appropriate." (Id. ¶ 6.)

---

[2] To be clear, PrimeSource's motion is aimed at the conduct of Huttig, not the Felten Defendants, and cites the version of the TRO issued on April 19, 2017, as the particular provision that it says Huttig violated. (R. 174, Pl.'s Mot. ¶¶ 4, 6.)

2

## Analysis

The court's power to hold a party in civil contempt stems from its "inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). The party seeking a finding of contempt has the burden to "establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). To meet the "clear and convincing" standard PrimeSource must show that it is "highly probable" that Huttig violated the TRO. *See United States v. Boos*, 329 F.3d 907, 911 (7th Cir. 2003). That requirement "manifests society's judgment that the risk of error is to be borne by the party seeking the contempt order and its unwillingness to allow punishment for a claimed violation of a court order, save where the evidence warrants a high degree of confidence in the correctness of the determination that a contempt has occurred." *Am. Family Mut. Ins., Co. v. Roth*, No. 05 CV 3839, 2007 WL 2377335, at *4 (N.D. Ill. Aug. 16, 2007).

As an initial matter, although PrimeSource captioned its motion as one for an issuance of a rule to show cause as well as a finding of contempt, the court recommends treating the motion as simply seeking a contempt ruling. Historically show-cause motions were used to satisfy due-process notice requirements by giving

3

the non-moving party notice of his chance to respond to a request for contempt sanctions before the substantive requested relief is considered. *Hyatt*, 621 F.3d at 695. But "a Rule 6(c) notice of hearing and a Rule 7(b) motion stating the grounds for the relief and specifying the actual relief sought suffice to provide due-process notice to the nonmoving party prior to entry of a court order," and those rules "largely eliminated the need to seek show-cause orders." *Id.* Because Huttig has had ample notice of the contempt claims against it and has responded to PrimeSource's arguments, there is no need to direct a rule to show cause, and the court may rule directly on the request for contempt. *See Am. Family Mut. Ins.*, 2007 WL 2377335, at *14; *see also Sommerfield v. City of Chi.*, 252 F.R.D. 407, 414-15 (N.D. Ill. 2008).

Turning to the merits of the motion, this court recommends a finding that PrimeSource has not met its burden of showing that Huttig violated the TRO's requirements by clear and convincing evidence. In its motion PrimeSource does not point the court to any specific testimony demonstrating that Huttig violated the TRO, resting instead on blanket assertions that Huttig has used information from Customer Lists created by the Felten Defendants to call on customers for the sale of fasteners. (R. 174, Pl.'s Mot. ¶¶ 3-4.) In fact it points to no specific evidence at all, despite this court's local rules requiring a contempt motion to be accompanied by an affidavit that "set[s] out with particularity the misconduct complained of" and any related damages. *See* N.D. Ill. L.R. 37.1. In response to the motion, Huttig has come forward with evidence from the preliminary hearing explaining how Huttig

4

compiled customer information in the spring of 2017 and supporting its assertion that its salespeople have not used the information compiled in the Felten Defendants' customer lists to solicit customers in violation of the TRO. (R. 193.) Rather than pointing to evidence of a clear violation in its reply, PrimeSource simply argues that Huttig's evidence is unreliable and should be disregarded. (R. 202, Pl.'s Reply at 2-11.) But it is not Huttig's burden to show PrimeSource's lack of entitlement to a contempt order and accompanying relief. *See Sommerfield*, 252 F.R.D. at 417. Rather, it is up to PrimeSource to provide clear and convincing evidence that Huttig's post-TRO conduct violated the prohibition against using the Felten Defendants' customer lists to solicit customers to whom the Felten Defendants had sold products during their previous two years at PrimeSource. *See Hyatt*, 621 F.3d at 692.

Although PrimeSource's failure to set out the facts on which its motion relies with any particularity is reason alone to deny the motion, the court will briefly address the evidence Huttig has presented in support of its compliance with the TRO. The evidence at the preliminary hearing shows that shortly after they started working at Huttig the Felten Defendants created customer lists based on their memory of customers they had served while at PrimeSource. In March 2017 Kessler incorporated information from those lists into what the parties refer to as "the Updated Pivot Spreadsheet." PrimeSource appears to be asserting that Huttig violated the TRO by allowing its salesforce to use the Updated Pivot Spreadsheet to solicit customers. But it points to no evidence to support that assertion. Huttig has

5

submitted a declaration from its CEO, Jon Vrabely, swearing that to the best of his knowledge no one at Huttig has used the Updated Pivot Spreadsheet to solicit customers and that he has never authorized any employee to use the Updated Pivot Spreadsheet in efforts to solicit business. (R. 193, Defs.' Resp., Ex. F ¶¶ 9-10.) PrimeSource points to no evidence that anyone other than Kessler, Vrabely, and David Fishbein possessed the Updated Pivot Spreadsheet. Huttig asserts that its salesforce has been using what it calls "the Big Master List," which consists of pre-existing customer information and data that the Felten Defendants mined from publicly available resources, like trade association websites, rather than the Felten Defendants' own customer lists. (R. 193, Defs.' Resp. at 7.)

To the extent that PrimeSource is somehow arguing that Huttig's continued use of the Big Master List, to which the Felten Defendants contributed only information gleaned from public websites, not the customer lists they made based on their memories of their PrimeSource customers, it has not met its burden to show that such conduct violates an unambiguous command of the TRO. See Hyatt, 621 F.3d at 692. The TRO is clearly directed toward preventing Huttig from using confidential PrimeSource information gained from the Felten Defendants to solicit customers. Nothing in the TRO's language could be read to unambiguously preclude Huttig from using a customer list compiled using publicly available information simply because the Felten Defendants were involved in compiling that list after they started working at Huttig.

6

PrimeSource's attempt to cast doubt on or poke holes in the testimony Huttig provides in its response is insufficient to meet its affirmative burden of demonstrating that Huttig violated the TRO. For instance, PrimeSource argues that Vrabely's declaration should be disregarded because he does not say when he decided not to use the Updated Pivot Spreadsheet or how or to whom he communicated that decision and because, according to PrimeSource, his prior deposition testimony undermines the declaration. But PrimeSource points to no inconsistencies that could rise to the level of clear and convincing evidence undermining Vrabely's assertion that the Updated Pivot Spreadsheet was never used.[3] (R. 202, Pl.'s Reply at 2-6.) Its arguments directed at the declarations of Samuel Sprague, David Fishbein, and Paul Redwood suffer from the same deficiencies, where PrimeSource points to what it calls inconsistencies or ambiguities to try to undermine the credibility of the declarations without pointing to any evidence clearly showing that the Updated Pivot Spreadsheet was used to solicit customers after April 17, 2017. (Id. at 6-10.) Because the burden lies with PrimeSource to show that it is highly probable that Huttig violated the TRO by using the Felten Defendants' customer lists to solicit customers after the TRO was in place, not Huttig's to show that it did not violate the TRO, the court recommends a finding that PrimeSource failed to meet its burden here.

Finally, the court is unpersuaded by PrimeSource's assertion in its reply that "the sheer length of time it took Defendants to manufacture a defense to the TRO

---

[3] The court avoids quoting particular deposition testimony cited in PrimeSource's sealed reply because such testimony is protected by a confidentiality order.

7

violation undermines the credibility of that defense." (R. 202, Pl.'s Reply at 11.) PrimeSource appears to be arguing that because it raised its belief that Huttig violated the TRO at the preliminary injunction hearing and during preliminary injunction briefing, and Huttig did not directly respond with the evidence it now submits in defense against the current motion, that "failure . . . irreversibly taints their Response." (Id. at 12.) But Huttig was not required to respond to PrimeSource's assertion regarding the TRO in connection with the preliminary injunction proceedings, which were focused on the standards for preliminary injunctive relief. Moreover, this aspect of PrimeSource's argument ignores that in its proposed findings of fact and conclusions of law Huttig explicitly reserved the right "to fully address the issue of compliance with the [TRO], including with any new evidence not adduced at the recent evidentiary hearing." (R. 190, Defs.' P.I. Resp. at 34 n.8.) PrimeSource again is asking for the serious remedy of a contempt finding based on poorly supported inferences rather than evidence. Those inferences are insufficient to meet its burden.

## Conclusion

For the foregoing reasons, this court respectfully recommends that PrimeSource's Motion for Issuance of Rule to Show Cause and a Finding of Contempt be denied. (R. 174.)

ENTER:

Young B. Kim
United States Magistrate Judge